UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Jose Jair MOSQUERA CAMACHO,<br><br>Petitioner,<br><br>v.<br><br>Laura HERMOSILLO, Acting Field Office Director of Enforcement and Removal Operations, Seattle Field Office, Immigration and Customs Enforcement (ICE), et al.,<br><br>Respondents. | CASE NO. 2:25-cv-02457-TL-SKV<br><br>ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER |

This matter is before the Court on Petitioner Jose Jair Mosquera Camacho's (J.M.C.) motion for a temporary restraining order. Dkt. No. 7. On December 3, 2025, Petitioner filed a petition for writ of habeas corpus seeking, among other things, release from custody. Dkt. No. 1. Petitioner also moves for a temporary restraining order ("TRO") preventing: (1) his removal from this Court's jurisdiction; or (2) his transfer from the Northwest ICE Processing Center

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER – 1

1  ("NWIPC") in Tacoma, Washington, to any other facility while these proceedings are pending.
2  *See* Dkt. No. 7 at 2.

3  Petitioner's motion for a TRO asserts that Petitioner has been detained at NWIPC since
4  June 6, 2025. *Id.* Petitioner, a citizen of Colombia, first entered the United States on or about
5  March 25, 2023, to seek asylum. *Id.* at 3. Upon entering the United States, Petitioner was
6  apprehended by the U.S. Border Patrol, issued a notice to appear, then released from custody on
7  his own recognizance. *See id.* After his release, Petitioner lived "amongst friends and relatives"
8  in Lynden, Washington. *Id.* On or about August 8, 2024, the Department of Homeland Security
9  ("DHS") initiated removal proceedings. *Id.* On November 26, 2024, Petitioner applied for
10 asylum, and on November 27, 2024, an immigration judge scheduled an adjudication of
11 Petitioner's application for 2029. *See id.*

12 On June 6, 2025, U.S. Customs and Border Protection ("CBP") officers apprehended
13 Petitioner in Blaine, Washington, and transported him to NWIPC. *Id.* at 4. On September 3,
14 2025, an immigration judge granted withholding of removal to Petitioner, "protecting him
15 against deportation to Colombia." *Id.* "All parties waived appeal" of the immigration judge's
16 decision, rendering the decision final. *Id.*

17 Petitioner asserts that on or about November 18, 2025, Petitioner was informed that he
18 was to be deported to Mexico. *See id.* Removal to Mexico did not happen, however, because
19 "Mexico did not agree to take" Petitioner. *Id.* On or about December 2, 2025, "ICE officers told
20 [Petitioner] that they were now going to try to deport him to Honduras." *Id.* Petitioner represents
21 that he "has not [*sic*] ties to Honduras, he has never been to Honduras, and he fears harm in
22 Honduras." *Id.* Petitioner asserts that the notice about the impending removal to Honduras did
23 not include an expected date of removal, nor did it "contain sufficient additional information of
24

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER – 2

[Petitioner's] right to seek protection from removal to Honduras or how to seek that protection."[1] *Id.* Petitioner did not sign the notice "and later sought to inform the officer that he was afraid of being removed to Honduras on account of his status as an Afro-Colombian man and a community volunteer who undermined National Liberation Army (ELN) authority in Colombia." *Id.* Petitioner asserts that ICE has not provided him with further information regarding his removal to Honduras "or any other third country," and that Petitioner has not been scheduled for a fear screening despite the government's awareness of Petitioner's fear of deportation. *See id.*

In his habeas petition, Petitioner alleges that Respondents: (1) violated the Immigration and Nationality Act ("INA") by seeking to remove Petitioner to a third country without providing "the opportunity to access the protections required pursuant to 8 U.S.C. § 1231(b)(3) and its implementing regulations" (Dkt. No. 1 ¶¶ 141–144); (2) violated the Foreign Affairs Reform Restructuring Act of 1998 ("FARRA") by seeking to remove Petitioner to a third country without providing "the opportunity to access the protections required pursuant to FARRA and [the Convention Against Torture ('CAT')]" (*id.* ¶¶ 145–148); (3) violated the Fifth Amendment by "re-detain[ing] [Petitioner] and strip[ping] him of his liberty without written notice and a pre-deprivation hearing before a neutral decisionmaker to determine whether re-detention is warranted based on danger or flight risk," and by "revok[ing] [Petitioner's] release and depriv[ing] him of liberty without providing him written notice and a meaningful opportunity to be heard by a neutral decisionmaker prior to his re-detention" (*id.* ¶¶ 149–152).

Because "Respondents are attempting to summarily deport [Petitioner] to a third country without notice or an opportunity," and because Petitioner "fears harm" in that country, Petitioner seeks to enjoin his removal and transfer on an emergency basis. *See* Dkt. No. 7 at 5. Petitioner's

---

[1] Petitioner asserts that under Respondents' policy, notice of removal "can . . . be provided mere hours before placement on a plane." Dkt. No. 7 at 8.

counsel has provided written certification that complies with Federal Rule of Civil Procedure 65(b)(1). *See id.* at 24.

The Court may grant a TRO to preserve the Court's jurisdiction and to maintain the status quo. *See A.A.R.P. v. Trump*, 605 U.S. 91, 97 (2025) (Federal courts have "the power to issue injunctive relief to prevent irreparable harm to the applicants and to preserve [] jurisdiction over the matter."); *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("[T]he District Court ha[s] the power to preserve existing conditions while it . . . determine[s] its own authority to grant injunctive relief," unless the assertion of jurisdiction is frivolous.). This is particularly so when the order is necessary to prevent action that would otherwise destroy the court's jurisdiction or moot the case. *See United States v. Shipp*, 203 U.S. 563, 573 (1906).

Accordingly, the Court ORDERS as follows:

(1) Petitioner's motion for temporary restraining order (Dkt. No. 7) is PROVISONALLY GRANTED, pending Respondents' resopnse to the motion. This grant is solely for the purpose of maintaining the status quo so that the Court may review the merits of the motion after full briefing.

(2) Respondents ARE PROHIBITED from removing Petitioner from the United States or transferring him from the Northwest ICE Processing Center to any other detention facility during the pendency of these proceedings, without further order, unless such transfer is necessary for medical evaluation, medical treatment, or release.

(3) Petititioner's counsel SHALL immediately contact Respondents' counsel to provide a copy of this Order and to meet and confer on: (1) a briefing schedule for the motion for TRO; and (2) whether Respondents will agree to a stipulated order to not remove or transfer Petitioner during the pendency of this action.

(4)    If the Parties can agree on a briefing schedule, they SHALL file a stipulated proposed briefing schedule with the Court, along with any other stipulations the Parties may agree on for the pendency of this case. If the Parties cannot reach agreement on a briefing schedule, then Respondents SHALL respond to the motion for TRO pursuant to the schedule set by Local Civil Rule 65, once notice is accomplished.

Dated this 5th day of December, 2025.

_____
Tana Lin
United States District Judge