UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Jose Jair MOSQUERA CAMACHO,<br><br>      Petitioner,<br><br>  v.<br><br>Laura HERMOSILLO, Acting Field Office Director of Enforcement and Removal Operations, Seattle Field Office, Immigration and Customs Enforcement (ICE), et al.,<br><br>      Respondents. | CASE NO. 2:25-cv-02457-TL-SKV<br><br>ORDER ON REPORT AND RECOMMENDATION |

  This matter is before the Court on the Report and Recommendation of the Honorable S. Kate Vaughan, United States Magistrate Judge (Dkt. No. 19), and Petitioner's Objections to the Report and Recommendation (Dkt. No. 21). Having reviewed the Report and Recommendation, Petitioner's objections, Respondents' response (Dkt. No. 23), and the relevant record, the Court ADOPTS IN PART the Report and Recommendation, but also SUSTAINS IN PART and OVERRULES IN PART Petitioner's objections.

ORDER ON REPORT AND RECOMMENDATION – 1

## I. REPORT AND RECOMMENDATION

The Court assumes familiarity with the background of this case, which was thoroughly presented in Judge Vaughan's Report and Recommendation. *See* Dkt. No. 19 at 2–5. On February 10, 2026, Petitioner timely submitted three objections to the Report and Recommendation: (1) that the Magistrate Judge erred in concluding that Petitioner has abandoned his third-country removal claims (Dkt. No. 21 at 1–4); (2) that the Magistrate Judge erred in concluding that Petitioner's unconstitutional re-detention has no bearing on the lawfulness of his current detention (*id.* at 4–6); and (3) that the Magistrate Judge erred in concluding that Petitioner's current detention is lawful (*id.* at 6–8). On February 23, 2026, Respondents timely responded to Petitioner's objections. Dkt. No. 23.

### A. Legal Standard

A district court has jurisdiction to review a magistrate judge's report and recommendation on dispositive matters. *See* Fed. R. Civ. P. 72(b). The district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1). A party properly objects when the party files "specific written objections" to the report and recommendation as required under Federal Rule of Civil Procedure 72(b)(2).

### B. Discussion

The Court will address Petitioner's objections in turn.

ORDER ON REPORT AND RECOMMENDATION – 2

### 1.     First Objection: Abandonment of Third-Country Removal Claims

Petitioner asserts that he has not abandoned his third-country removal claims. Dkt. No. 21 at 1. Petitioner argues that he raised the claim in his petition (*see* Dkt. No. 1 ¶¶ 90–103), and "[t]he fact that it was not specifically addressed in the Petitioner's Traverse and Response to Petition for Writ of Habeas Corpus does not constitute abandonment." Dkt. No. 21 at 1–2. Petitioner suggests that Respondents did not address his third-country removal claims in their Return (Dkt. No. 15), and that Petitioner could therefore decline to discuss them in his Traverse (Dkt. No. 17) without abandoning them. *See* Dkt. No. 21 at 2. The Court disagrees.

In his Petition, Petitioner challenges Respondents' third-country removal policy. *See* Dkt. No. 1 ¶¶ 90–103. Petitioner alleges, "The [Immigration and Naturalization Act ('INA')], [Foreign Affairs Reform Restructuring Act of 1998 ('FARRA')], and the Due Process Clause demand far more than Respondents' policy requires" (*id.* ¶ 90), and Petitioner alleges specific deficiencies in the policy (*see id.* ¶¶ 91–103).

In response, in a discrete subsection of their Return's "Argument" section, Respondents addressed the allegations, both substantively and procedurally. *See* Dkt. No. 15 at 6–9. Respondents provided a cursory gloss on the third-country removal process and asserted that "ICE has recently served Petitioner with a third country removal notice to Mexico and to Honduras. If he does fear removal to Mexico or Honduras, Petitioner may file a motion to reopen his immigration case and ERO will not attempt to remove him if a motion to reopen is pending." *Id.* at 6. Respondents continue, "Petitioner will be given all the due process he is entitled to if he expresses fear and files a motion to reopen." *Id.* Respondents further asserted that the Court should decline to consider Petitioner's claim, because "Petitioner is a member of the non-opt out *D.V.D.* certified class." *Id.* at 7; *see D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025).

ORDER ON REPORT AND RECOMMENDATION – 3

1    In his Traverse (Dkt. No. 17), Petitioner did not engage with Respondents' arguments.
2 Instead, Petitioner obliquely discussed the *D.V.D.* issue, but not as it related to his third-country
3 removal claim. Petitioner argued, "The extent of Respondents' reliance on D.V.D. is misplaced.
4 Petitioner does not seek to relitigate the stayed injunction or obtain classwide relief. He seeks
5 individual habeas relief from unlawful detention and the denial of basic procedural protections—
6 a claim squarely within this Court's jurisdiction and independent of the class action posture."
7 Dkt. No. 17 at 10–11. Given Petitioner's failure to rebut Respondents' specific description of
8 how Petitioner's due-process rights are maintained in the third-country removal policy, the Court
9 does not find error in the Magistrate Judge's conclusion that he has abandoned his third-country
10 removal claim. *See Rintoul v. Old Dominion Freight Line, Inc.*, No. C21-1733, 2024 WL
11 2974469, at *2 (D. Or. June 13, 2024) ("Generally, the failure to respond to an argument on its
12 merits is grounds for deeming that argument abandoned or conceded.") (citing *Ramirez v.*
13 *Ghilotti Bros.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (collecting cases)).
14    Therefore, Petitioner's first objection is OVERRULED.
15    **2.    Second Objection: Unconstitutional Re-Detention**
16    Petitioner asserts that "the fact that Petitioner's current detention now falls under the
17 post-order rubric does not absolve Respondent's [*sic*] constitutionally impermissible re-detention
18 of the Petitioner in the first place." Dkt. No. 21 at 4. Petitioner provides substantial case law that
19 purports to support his position, but all of it is inapposite. The issue here is not simply whether
20 Petitioner's re-detention in June 2025 was constitutional. Rather, the issue is whether the
21 *seamlessness* between Petitioner's pre-removal-order re-detention and Petitioner's post-removal-
22 order detention *materially impacts* the constitutionality of the post-removal-order detention.
23 Petitioner argues that it does: "The Government cannot cure an unlawful arrest, or hide an
24 unlawful arrest, merely because proceedings have advanced to a different juncture." *Id.* But

ORDER ON REPORT AND RECOMMENDATION – 4

Petitioner's position is predicated on a presumption that the two instances of detention here are part of the same process—that is, that the September 2025 post-removal-order detention is an indistinguishable continuation of the June 2025 pre-removal-order re-detention. None of Petitioner's cited authority supports such a presumption. When determining the propriety of an individual's detention, the fact of the detention itself is but one factor—it matters *why* they are detained, and it matters *under what authority* they are detained. This is demonstrated by the fact that the INA governs pre-removal-order detention and post-removal-order detention under two separate statutes—8 U.S.C. § 1226 and 8 U.S.C. § 1231, respectively. The Supreme Court expressly recognized this distinction in *Zadvydas v. Davis*. 533 U.S. 678, 683 (2001).

Petitioner essentially presents two separate and discrete detentions, one that lasted between June 2025 and September 2025, and that was purportedly authorized by Section 1226, and one that began in September 2025 and is purportedly authorized by Section 1231. A habeas petition with respect to the latter cannot be applied to the former. *See, e.g.*, *United States v. Arnette*, 329 F. App'x 714, 715 (9th Cir. 2009) (finding that petitioner's habeas claim challenging prior detention "became moot when he was placed in custody pending disposition of the new charges"). Therefore, the Magistrate Judge did not err in concluding that "the manner of [Petitioner's] re-detention has no bearing on the lawfulness of his current detention." Dkt. No. 19 at 7.

Therefore, Petitioner's second objection is OVERRULED.

**3.     Third Objection: Lawfulness of Current Detention**

Petitioner asserts that his post-removal-order detention has exceeded the six-month limit that is presumptively reasonable under *Zadvydas*. *See* Dkt. No. 21 at 7. Petitioner asserted that his detention began when he was re-detained in June 2025, which meant that the presumption of reasonableness expired in December 2025. *See id.* In the Report and Recommendation, the

ORDER ON REPORT AND RECOMMENDATION – 5

Magistrate Judge rejected Petitioner's assertion that his detention—at least for the purposes of *Zadvydas*—began in June 2025. *See* Dkt. No. 19 at 7. As discussed above, the Court agrees with the Magistrate Judge in that regard. However, if the Court now uses September 3, 2025—the date Petitioner's removal became administratively final—as the starting point for his six-month period of presumptively reasonable detention under *Zadvydas*, then the Court must recognize that such a presumption expired on March 3, 2026. "After this 6-month period, once the [non-citizen] provides good reason to believe that there is no significant of likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Here, Petitioner asserted in his objection that:

> [O]n February 4, 2026, ICE acknowledged to the undersigned that (1) Petitioner cannot be removed to his country of origin; (2) ICE has not secured a third country of removal; and (3) Petitioner must arrange a third country of removal and present his request to ICE in order to remain in compliance.

Dkt. No. 21 at 7. This demonstrates good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.[1] After all, if removal were truly imminent, Respondents would not need Petitioner's help in finding a place for him to go. The obvious conclusion is that Respondents have not identified a third country to which they can remove Petitioner, let alone secured travel documents and made other necessary arrangements to effectuate a removal. Under *Zadvydas*, then, the burden shifts to Respondents to rebut

---

[1] The Court agrees with Petitioner that Respondents' insistence that Petitioner arrange for his own third-country removal is indicative of Respondents' failure to make such arrangements themselves. *See* Dkt. No. 21 at 7. Petitioner asserts that this information was gleaned from a "conversation . . . at the Northwest ICE Processing Center," in which Petitioner's counsel was a participant. *Id.* at 7 n.1. Petitioner's counsel has not provided an affidavit or declaration attesting to the substance of that conversation, but he avers that he "would swear under oath to the conversation subject matter if required." *Id.* In light of Counsel's obligations to the Court under Federal Rule of Civil Procedure 11, the Court is satisfied with the veracity of Petitioner's assertion that Respondents did in fact instruct Petitioner to relieve them of some part of their burden of removing him.

Petitioner's showing. *See Zadvydas*, 533 U.S. at 701. Respondents have not done so. For one thing, Respondents' assertion that "Petitioner failed to present evidence that Mexico or Honduras will not accept him for removal" is untrue. Dkt. No. 23 at 3–4. In light of Respondents' zeal to eject Petitioner from the United States, the fact that he remains here represents at least some evidence that Respondents' efforts have come up short.

And Respondents' reliance on "evidence that they are actively pursuing removal to Mexico and Honduras" is insufficient. *Id.* at 4. Courts in this District and elsewhere have repeatedly and consistently rebuffed Respondents' ongoing campaign to equate "We're trying" with "We will." *See, e.g.*, *Jaranow v. Bondi*, No. C25-2396, 2026 WL 35864, at *4 (W.D. Wash. Jan. 6, 2026); *Baltodano v. Bondi*, No. C25-1958, 2025 WL 3484769, at *5 (W.D. Wash. Dec. 4, 2025). "General indications that U.S. agencies have been in discussions with [the target country] regarding repatriation efforts do not indicate that those discussions will result in the timely removal of Petitioner, as it is unclear whether those efforts will be successful." *Zhao v. Kelly*, No. C17-777, 2017 WL 1591818, at *4 (C.D. Cal. Apr. 27, 2017); *see also Gilali v. Warden of McHenry Cnty. Jail*, No. C19-837, 2019 WL 5191251, at *5 (E.D. Wis. Oct. 15, 2019) (holding that although the "respondent asserts that [the petitioner's] travel document requests . . . remain pending and ERO continues to follow up on the documents' status, . . . this is insufficient. It is merely an assertion of good-faith efforts to secure removal; it does not make removal likely in the reasonably foreseeable future."). There is no indication in the docket that Respondents are closer to removing Petitioner today than they were when they responded to his objections on February 23, 2026. Petitioner has thus demonstrated that his continued detention is unlawful.

Therefore, Petitioner's third objection is SUSTAINED.

ORDER ON REPORT AND RECOMMENDATION – 7

**C.     Relief**

Where the Government fails to rebut Petitioner's showing that removal is not likely in the reasonably foreseeable future, Petitioner is entitled to habeas relief. *See Zadvydas*, 533 U.S. at 701. Because the Court agrees with the Magistrate Judge that Petitioner has abandoned his third-country removal claims, however, the Court DENIES Petitioner's petition with respect to relief connected to third-country removal.

## II.     CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

(1)    Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

   (a)    SHALL release Petitioner from detention **no later than 5:00 p.m. on March 7, 2026,** under appropriate conditions of release;

   (b)    SHALL submit to the Court, **within forty-eight (48) hours** of Petitioner's release from detention, a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(2)    Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

(3)    The Clerk is DIRECTED to send copies of this Order to all counsel of record and to the Honorable S. Kate Vaughan.

Dated this 6th day of March, 2026.

Tana Lin
United States District Judge